IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BLACKTOP INDUSTRIES, INC.,,

            Plaintiff,

v.                                        CIVIL ACTION NO. 3:09-0100

CLEVELAND CONSTRUCTION, INC., and
WAL-MART STORES EAST, L.P.,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss filed by Defendants Cleveland Construction, Inc. (Cleveland) and Wal-Mart Stores East, L.P. (Wal-Mart) [Doc. No. 3-2]. In their motion, Defendants argue the action filed by Plaintiff Blacktop Industries, Inc. (Blacktop) should be dismissed for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure[1] or, in the alternative, transferred to the United States District Court encompassing Lake County, Ohio. For the following reasons, the Court agrees with Defendants that the action must be dismissed.

**I.
FACTS**

Plaintiff filed this action in the Circuit Court of Wayne County, West Virginia, on November 12, 2008. In the Complaint, Plaintiff asserts it is a paving contractor with its principal place of business in Wayne County, West Virginia. Cleveland is a general contractor and is

---

[1] *See Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (2006) (holding that "a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue" (footnote omitted)).

incorporated in Nevada with its principal place of business in Mentor, Lake County, Ohio. Wal-Mart is incorporated in Delaware with its principal place of business in Bentonville, Arkansas. Defendants jointly removed this action to this Court based upon diversity of jurisdiction and alleged damages in excess of $75,000. *See* 28 U.S.C. § 1332(a)(1).

Plaintiff alleges in its Complaint that Cleveland had an agreement with Wal-Mart to act as a general contractor for the construction of a Wal-Mart store in Hurricane, Putnam County, West Virginia. In turn, Cleveland subcontracted with Plaintiff to deliver asphalt and perform paving at the location. Plaintiff asserts that it completed its obligations under the subcontract, but Defendants have failed to pay it $595,012.47 for the work it performed. Plaintiff claims both breach of contract and unjust enrichment.

## II.
## DISCUSSION

In their Motion to Dismiss, Defendants argue that the subcontract at issue contains a choice of law and forum selection clause, which provides:

> This Agreement shall be governed by the laws of the State of Ohio. Any claims, actions or causes of action arising out of or relating to this Agreement shall be brought in Lake County, Ohio, and [sic] U.S.A.

*Subcontract Agreement*, at 18, ¶37. As Plaintiff filed its action in Wayne County, West Virginia, rather than Lake County, Ohio, Defendants insist that the case must either be dismissed or transferred. On the other hand, Plaintiff argues the provision is unenforceable because it is a contract of adhesion.

The first question this Court must answer is what law applies to determine whether the provision is enforceable. As this Court sits in diversity, it must apply the substantive law of the forum state, which in this case is West Virginia. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *Choice Hotels, Int'l, Inc. v. Chewl's Hospitality, Inc.*, 91 Fed. Appx. 810, 814 (4th Cir. 2003) (per curiam) (citing *Klaxton* and holding that a determination of whether choice-of-law and choice-of-forum clauses are contracts of adhesion is governed by the law of the state in which the diversity action was brought). In *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265 (W. Va. 2002), the West Virginia Supreme Court observed that "[a]dhesion contracts include all form contracts submitted by one party on the basis of this or nothing [* * * ]." 567 S.E.2d at 273 (quoting *American Food Management, Inc. v. Henson*, 434 N.E.2d 59, 62-63 (Ill. App. Ct. 1982) (internal quotation marks and citations omitted)). An adhesion contract is not *per se* invalid. The fact that an adhesion contract exists is only the starting point of a court's analysis. If the terms of an adhesion contract are challenged, the court's role is to distinguish "good adhesion contracts which should be enforced from bad adhesion contracts which should not." *Id.* (internal quotation marks and citations omitted; footnote omitted).

In this case, Plaintiff asserts that the contract at issue meets the definition of a contract of adhesion because "[i]t was a pre-printed form, prepared by or on behalf of the defendants and was essentially presented in a 'take it or leave it' fashion such that it could not be amended or changed." *Memorandum in Opposition to Motion to Dismiss*, at 3. In its Reply, Defendants refute that the contract is one of adhesion. In support, Defendants have submitted an affidavit from Keith Ziegler, Vice President of Construction for Cleveland Construction, Inc., in which he states that

"[o]ur contracts are not form, standardized contracts, but rather documents drafted after a bidding process and further negotiations. . . . To the extent they desired, Blacktop Industries, Inc., was free to negotiate the contract that is at issue in this litigation." *Affidavit of Keith Kiegler*, at ¶¶ 6 and 7. In addition, Defendants argue that, even if one assumes for the sake of argument that an adhesion contract exists, Plaintiff has failed to demonstrate that the forum selection clause should not be enforced. For the following reasons, the Court agrees.

To determine whether a contract of adhesion is enforceable, the Court must determine whether the terms of the contract are unconscionable. In Syllabus Point 3 of *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749 (W. Va. 1986), the West Virginia Supreme Court explained that "[a]n analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." The West Virginia Supreme Court recognized that "some inequality of bargaining power exists" in numerous commercial arrangements and such inequality, in and of itself, does not make a contract unconscionable. *Art's Flower Shop, Inc. v. Chesapeake and Potomic Tel. Co.*, 413 S.E.2d 670, 674 (W. Va. 1992) (citation omitted). Instead, "gross inadequacy in bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion or may show that the weaker party had no meaningful, no real alternative, . . . to the unfair terms." *Id*. at 674-75 (quoting *Troy Mining Corp.*, 346 S.E.2d at 753, quoting Restatement (Second) of Contracts § 234 comment d at 111 (Tent. Draft No. 5, 1970)). Therefore, a court "must focus on the relative positions of the parties, the adequacy

of the bargaining position, the meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the contract.'" *Syl. Pt. 4*, *Art's Flower Shop*.

More recently, the West Virginia Supreme Court explained that an unconscionable term exists when its application in an adhesion contract

> would impose unreasonably burdensome costs upon or would have a substantial deterrent effect upon a person seeking to enforce and vindicate rights and protections or to obtain statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public . . .; unless the court determines that exceptional circumstances exist that make the provisions conscionable. In any challenge to such a provision, the responsibility of showing the costs likely to be imposed by the application of such a provision is upon the party challenging the provision; the issue of whether the costs would impose an unconscionably impermissible burden or deterrent is for the court.

Syl. Pt. 4, *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265 (W. Va. 2002), in part.

Here, Plaintiff argues the choice of law and forum selection clauses are unconscionable because it is a relatively small paving and blacktopping company and Defendant Wal-Mart is the largest employer is West Virginia, while Defendant Cleveland describes itself on its website as "a major force in the construction industry." *Memorandum in Opposition to Motion to Dismiss*, at 5 (quoting Cleveland's website). Plaintiff asserts that it could not survive without paving contracts on construction projects such as the one at issue here, but the contract gives Cleveland an unfair home advantage by requiring Plaintiff to litigate issues in Ohio, under Ohio law.

Plaintiff also asserts that litigating in Ohio will create an undue hardship because it will make a jury view of the parking lot difficult because it will require a five hour drive from Lake County, Ohio.

Upon review of Plaintiff's arguments, the Court finds that Plaintiff has failed to establish the unconscionability necessary to make the provision unenforceable. First, assuming there is some disparity among the bargaining powers of the parties, the Court recognizes that this contract was entered into by experienced companies and Plaintiff has failed to demonstrate that there was a "*gross* inadequacy in bargaining power." *Troy Mining Corp.*, 346 S.E.2d at 753 (internal quotation marks and citation omitted; emphasis added). Indeed, Mr. Kiegler states in his affidavit that Plaintiff "was free to negotiate the contract that is at issue in this litigation." *Affidavit of Keith Kiegler*, at ¶7. Second, Plaintiff does not allege that litigating this case in Ohio and under Ohio law will deprive it of its day in court or impose unreasonably burdensome costs upon it. Third, Plaintiff does not assert that it did not understand the terms of the contract or Defendants acted fraudulently in getting Plaintiff to enter into the contract. Fourth, although Plaintiff insists that such construction contracts are its "life-blood," Wal-Mart and Cleveland clearly are not the only companies or individuals which offer construction contracts in West Virginia and there is no allegation that Plaintiff was coerced by Defendants to sign this particular contract.

The Court further rejects Plaintiff's argument that the provision should not be enforced because it will give Defendants "a tremendous 'home-field' advantage" in that the litigation will occur where Cleveland operates its principal place of business. It is without doubt that choice of law and forum selection clauses frequently designate the law and forum of where one of

-6-

the parties is incorporated or resides. If this ground alone was sufficient to find such clauses unenforceable, it would injudiciously eviscerate the certainty and consistency that these provisions are designed to provide in innumerable contracts. The Court also is not persuaded that the forum selection clause should not be enforced because it will make a jury view of the parking lot difficult. The difficulty of a jury view in this case does not rise to a level of making the forum selection clause unconscionable. Moreover, this Court has every confidence that a court in Ohio can adequately protect the rights of all the parties involved.[2] Accordingly, the Court rejects Plaintiff's arguments that the provision should not be enforced because it is an unconscionable provision in a contract of adhesion.

Plaintiff next argues that, even if the Court finds that the forum selection clause is enforceable, the Court should retain the case under the doctrine of *forum non conveniens*. However, the Court agrees with Defendants that if the forum selection clause is otherwise enforceable and requires Plaintiff to file its action in Ohio, then it is for the Ohio court, not this Court, to entertain a transfer motion based upon forum non conveniens. Therefore, the Court will not rule on the merits of Plaintiff's forum non conveniens argument.

---

[2]Although a decision on a jury view is premature at this point in the litigation, the Court recognizes that modern video and photographic technology often makes such views unnecessary.

## III.
## CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** this action **without prejudice**.[3]

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: April 28, 2009

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[3]As the Court dismisses this action, it need not rule on Defendants' alternative motion to transfer.

-8-